UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VICTORIA BREEDLOVE,

    Plaintiff,

v.                                                Case No. 8:20-cv-2909-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

    Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for a period of disability, child disability insurance benefits ("CDIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.    Procedural Background**

Plaintiff filed an application for a period of disability, CDIB, and SSI (Tr. 234-41, 249-52). The Social Security Administration ("SSA") denied Plaintiff's

---

[1] Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

claims both initially and upon reconsideration (Tr. 146-49, 180-81, 188-96, 202-13). Plaintiff then requested an administrative hearing (Tr. 215-29). Per Plaintiff's request, the ALJ conducted a telephonic hearing at which Plaintiff appeared by telephone and testified (Tr. 26-60). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 7-25). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 231-33). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**B.    Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1996, claimed disability beginning February 1, 2007 (Tr. 234, 236, 249, 251).[2] Plaintiff obtained at least a high school education (Tr. 255). Plaintiff did not have any past relevant work (Tr. 20, 255). Plaintiff alleged disability due to bipolar disorder and back problems (Tr. 254).

In rendering the administrative decision, the ALJ indicated that Plaintiff had not attained the age of 22 as of February 1, 2007, the alleged onset date (Tr. 13). The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since February 1, 2007 (Tr. 13). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe

---

[2] While noting the February 1, 2007 alleged onset date, the ALJ indicated that, given a prior unfavorable decision by another ALJ on August 10, 2017, the earliest possible alleged onset date for purposes of the current application was August 11, 2017 (Tr. 17). The ALJ further noted that, although Plaintiff alleged disability beginning February 1, 2007, the earliest medical evidence indicated a December 2015 treatment date.

impairments: degenerative disc disease, obesity, bipolar disorder, mood disorder, generalized anxiety disorder, and attention deficit hyperactivity disorder (ADHD) (Tr. 13). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work, except Plaintiff could climb ramps and stairs, balance, stoop, kneel, crouch, and crawl no more than frequently; was able to climb ladders, ropes, and scaffolds; should never operate a motor vehicle as part of a job; was limited to simple, routine, repetitive tasks and making simple work-related decisions; was limited to no more than frequent interaction with supervisors; and was limited to no more than occasional interaction with coworkers and the public (Tr. 16). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 17). More specifically, the ALJ concluded that Plaintiff's "debilitating allegations of back pain and mental health symptoms are inconsistent with imaging, physical examination findings from treating physicians, mental status evaluations, and high functioning activities of daily living" (Tr. 17).

The ALJ determined that Plaintiff had no past relevant work (Tr. 20, 49).

Notwithstanding, given Plaintiff's background and RFC, a vocational expert ("VE") testified that Plaintiff could perform jobs existing in significant numbers in the national economy, such as a laundry folder, a cleaner, and a garment packer (Tr. 21, 49-51). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 21).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect, including a provision for payment of a child's benefits on the earnings record of an insured person who is entitled to benefits if the claimant is 18 years old or older and has a disability that began before attaining age 22. *See* 20 C.F.R. § 404.350(a)(5); *see* 42 U.S.C. § 402(d)(1). The regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the

sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

### III.

Plaintiff argues that the ALJ erred by failing to properly evaluate Plaintiff's subjective complaints in finding Plaintiff not disabled. Primarily, Plaintiff argues that the ALJ failed to appropriately consider Plaintiff's auditory hallucinations, angry outbursts due to irritability, headaches, and need to elevate her legs due to her varicose veins. At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R.

§§ 404.1545(a)(1), 416.945(a)(1).  In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e), 416.945(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole").  In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3), 416.929(c)(3)(i)-(vii), 416.945(a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

       In addition to the objective evidence of record, the Commissioner must

consider all the claimant's symptoms,[3] including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 16-3p, 2017 WL 5180304, at *2. To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Consideration of a claimant's symptoms therefore involves a two-step process, wherein the Commissioner first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16-3p, 2017 WL 5180304, at *3-9. If the Commissioner determines that an underlying physical or mental impairment could reasonably be expected to produce the claimant's symptoms, the Commissioner evaluates the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2017 WL 5180304, at *3-9. Notably, in considering a claimant's subjective complaints, the ALJ considers both inconsistencies in the evidence and the extent

---

[3] The regulations define "symptoms" as a claimant's own description of his or her physical or mental impairment. 20 C.F.R. §§ 404.1502(i), 416.902(n).

to which any conflicts exist between the claimant's statements and the rest of the evidence, including the claimant's history, signs and laboratory findings, and statements by treating or nontreating sources or other persons about how the symptoms affect the claimant. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225 (citation omitted). A reviewing court will not disturb a clearly articulated credibility finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (*per curiam*) (citation omitted).

As noted above, Plaintiff contends that the ALJ failed to properly consider several of her subjective complaints. During the administrative hearing, Plaintiff testified that she experienced lower back pain relating to a bulging disc in her lumbar spine, for which she engaged in physical therapy exercises and received chiropractic treatment (Tr. 36-37). Plaintiff indicated that she experienced blood flow issues in both legs and varicose veins for approximately two years, for which a doctor recommended an ablation surgery and elevation of her legs (Tr. 37-38). Though she did not use support stockings due to insurance issues, she indicated that she would elevate her legs daily about three times per day for two hours (Tr. 38-40). She stated that she could only stand for about 10 minutes before starting to feel dizzy and because her lower back would start hurting (Tr. 38-39). As for sitting, Plaintiff explained that sitting was better than standing, but she could only sit for no

more than five minutes, and, to do so, she would need to lie a certain way to remain comfortable (Tr. 39).  Plaintiff estimated that she could lift and carry eight pounds at one time but would have trouble with her arms reaching and handling, given her inability to reach up very far due to straining in her back (Tr. 40).  Plaintiff further indicated that she suffered from severe headaches three times per week for almost two hours each time and that she took medication to help with the pain but that the medication did not actually help (Tr. 40-41).

As to her mental impairments and limitations, Plaintiff stated that she treated with a psychiatrist and went through periods where she felt better than others (Tr. 41).  During the periods where she was not doing well, she would get very irritated and occasionally hear voices, which would inhibit her ability to focus, and, during periods when she was doing well, she would get less irritated but with an off-balanced mood (Tr. 41-42).  Plaintiff reported problems being around men and difficulties being outside the house, including feeling irritated and only leaving the house if her mother accompanied her (Tr. 42-43).  According to Plaintiff, she only went to the grocery store with her mother, where she would sit in the car until her mother finished grocery shopping, and she would otherwise just sit in her room occasionally listening to music and get up to shower and eat (Tr. 43-45).  She expressed that her anxiety was her main concern (Tr. 47).

Later in the administrative hearing, both the ALJ and Plaintiff's counsel posed hypotheticals to the VE that incorporated several work limitations.  In response to the ALJ's hypothetical involving the limitations outlined in the RFC

and work in the light exertional category, the VE testified that such hypothetical individual could perform the jobs of laundry folder, office cleaner, and garment packer (Tr. 49-50). When Plaintiff's counsel added a limitation to elevate the legs six inches off the ground for twenty minutes twice daily, the VE testified that work in the medium exertional category would not provide an opportunity to elevate one's legs and that some occupations would be removed from the light exertional category but that a hypothetical individual with the leg-elevation limitation and other noted limitations could still perform the work of a laundry folder and sorter with a sit/stand option if the legs were elevated on a rung of a stool (Tr. 53-54). According to the VE, if, for example, the legs needed to be elevated on a foot stool six to eight inches off the ground, it would not be practical or possible in the light exertional category of jobs (Tr. 54). Regarding a limitation to account for angry verbal outbursts occurring a couple times per week without threats of physical violence to show that the individual was upset, the VE testified that such individual would not be able to perform the jobs identified over the long term due to most employers' implementation of a progressive disciplinary process, wherein an employee could be terminated if the behavior was not corrected, for instance, after the employer advised of the issue when initially demonstrated and then afforded an opportunity to improve following some combination of verbal advisement, written counseling, or suspension and depending on the egregiousness of the behavior (Tr. 54-55).

Following the administrative hearing, the ALJ issued his decision, finding

Plaintiff not disabled (Tr. 7-25). The ALJ acknowledged that Plaintiff alleged multiple impairments and associated limitations, including her testimony regarding back pain due to bulging discs with a history of physical and chiropractic treatments; problems with varicose veins in her legs and blood flow problems; her ability to stand ten minutes and sit five to ten minutes; her need to elevate her legs three times daily for two to three hours; her mental health treatment; and problems with irritability, hearing voices, paranoia, and focus (Tr. 13, 17). After summarizing Plaintiff's testimony, the ALJ correctly indicated that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with the medical evidence and other evidence of record (Tr. 17).

For example, regarding Plaintiff's headaches, the ALJ found that they constituted a non-severe impairment (Tr. 13). As the ALJ indicated, though Dr. Keshava Babu diagnosed Plaintiff with headaches and Plaintiff complained of frequent headaches in 2017, treatment notes through mid-2018 showed no complaints of headaches and no indication of frequent headaches (Tr. 13, 310-21, 385, 389, 447). The ALJ pointed to an MRI of the brain conducted in June 2017 based upon Plaintiff's complaints of headaches and dizziness that revealed unremarkable findings (Tr. 421-22). While Plaintiff reported worsening headaches and received medication in late 2018, the ALJ noted that her subsequent treatment notes did not reflect any ongoing significant problems with headaches (Tr. 13, 311-12, 407-16, 423-25, 447, 450, 455, 465, 506, 513).

Likewise, the ALJ concluded that Plaintiff's varicose veins constituted a non-

severe impairment while also considering Plaintiff's complaints of pain, swelling in the feet, inability to walk long distances, and need to elevate her legs (Tr. 13, 17). As the ALJ explained, Plaintiff was diagnosed with peripheral venous insufficiency and demonstrated occasional edema and prominent veins, with a venous ultrasound reflux test indicating bilateral great saphenous vein and short saphenous vein reflux and with symptoms present despite compression therapy (Tr. 13, 406-09, 447-57, 465-67, 510). As the ALJ highlighted, however, subsequent treatment notes did not reflect ongoing significant complaints regarding venous insufficiency, and Plaintiff's examination findings were normal (Tr. 13). Indeed, Plaintiff often presented ambulating normally with no difficulty and with a normal gait, normal station, normal posture, normal tone, normal strength, normal movement of all extremities, full range of motion, normal coordination, and no edema and varicosities (Tr. 13, 17, 315-16, 318, 320-21, 385-86, 389-90, 397-98, 408, 411-12, 448, 451, 456, 466, 502, 506, 513, 517, 520). In addition, the ALJ properly noted that no medical provider instructed Plaintiff to elevate her legs multiple times daily (Tr. 13).

The ALJ also thoroughly considered Plaintiff's subjective complaints regarding her back pain, noting that Plaintiffs lumbar spinal impairment resulted in some degree of functional limitation but not to the extent alleged (Tr. 17-19). In addition to the aforementioned treatment notes indicating normal findings upon examination, the ALJ discussed diagnostic imaging in 2017 that showed a disc bulge at L5-S1 superimposed with broad based central disc protrusion causing mild canal and right lateral recess stenosis, with the disc abutting the transiting right S1

nerve root in 2017 with subsequent diagnostic imaging in 2018 showing stable findings (Tr. 17, 426-29). The ALJ additionally noted physical examinations of the lumbosacral spine where, although Plaintiff demonstrated a positive straight leg test on the right, Plaintiff showed no tenderness to palpation, a full or only mildly reduced range of motion, muscle strength within normal limits, and a normal gait and station (Tr. 17, 384-91). The ALJ acknowledged that Plaintiff demonstrated some tenderness and pain with range of motion testing on subsequent examination but also noted that Plaintiff demonstrated a steady gait and no muscle atrophy at that time (Tr. 17, 397-99). Though Plaintiff complained of back pain in 2019 (Tr. 516-17), Plaintiff also presented with completely normal findings, including normal tone, normal motor strength, no tenderness, normal range of movement of all extremities, normal gait, normal station, and grossly intact sensation (Tr. 17-18, 506-07). In several instances, Plaintiff even denied back pain (Tr. 447, 450, 455, 506, 513, 523). Notwithstanding, as the ALJ noted, Plaintiff presented for physical therapy, demonstrating markedly reduced lumbosacral range of motion due to pain with palpation of the lower thoracic spine revealing moderate muscle spasm and moderate tenderness of the adjacent musculature bilaterally and palpation of the lower thoracic and lumbar regions revealing severe tenderness and muscle spasms bilaterally (Tr. 18, 19, 485-90). At the same time, Plaintiff presented with 5/5 deep neck muscle strength bilaterally and 4/5 lumbar muscle strength bilaterally (Tr. 18, 486).

Finally, the ALJ properly considered Plaintiff's mental impairments,

including her anger outbursts and auditory hallucinations (Tr. 13, 15, 18-20). Namely, the ALJ determined that Plaintiff's bipolar disorder, mood disorder, generalized anxiety disorder, and ADHD all constituted severe impairments (Tr. 13). The ALJ concluded that Plaintiff experienced moderate limitations as to her understanding, remembering, or applying information based on several treatment records showing normal and intact recent and remote memory despite Plaintiff's complaints of problems with her memory and with following instructions (Tr. 15, 260-67, 506, 510, 516-17, 523). The ALJ next concluded that Plaintiff experienced moderate limitations in interacting with others, specifically pointing to Plaintiff's allegations of irritability and anger outbursts but noting that Plaintiff's treatment notes indicated normal mood and, at times, less anger and decreased mood swings, especially when she complied with her medications (Tr. 15, 18-19, 343-80, 471-76, 495-96). As to Plaintiff's ability to concentrate, persist, or maintain pace, the ALJ found that Plaintiff had a moderate limitation, given her reported problems with concentration, ADHD diagnosis, and mental status evaluations revealing she had difficulty sustaining attention and that her attention and concentration were distractible, although none of her mental health treatment notes reflected testing of Plaintiff's concentration (Tr. 15, 18-19, 343-80, 471-76, 495-96, 506, 517). Regarding Plaintiff's ability to adapt or manage herself, the ALJ determined that Plaintiff experienced a mild limitation because, despite Plaintiff's statements that she did not handle stress or changes in routine well, her treatment records showed that her insight and judgment ranged from fair to mostly good (Tr. 15, 18-19, 260-

67, 343-80, 471-76, 495-96, 506, 517).

Going further, the ALJ discussed Plaintiff's treatment notes from 2015 through 2019 as well as a depression screening in 2020 (Tr. 18-19, 315, 320, 343-80, 386, 407-08, 412, 447-48, 471-76, 495-96, 506, 510, 513, 517, 523, 524). As the ALJ explained, Plaintiff experienced periods when her symptoms worsened, but Plaintiff tended to decompensate when she was non-compliant with her medications (Tr. 18). The ALJ correctly noted that Plaintiff's treatment records showed that her symptoms improved significantly when she took her medication consistently, as prescribed (Tr. 18). In discussing Plaintiff's mental impairments, the ALJ recognized her subjective complaints and symptoms but properly concluded that Plaintiff's mental impairments were not as severe or limiting as alleged.

Given the ALJ's determination that Plaintiff's physical and mental impairments were not as limiting as alleged, nothing required the ALJ to incorporate the added limitations into the RFC or a hypothetical posed to the VE. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported"). The ALJ provided substantial evidence in support of her decision, including the findings as to the severity of Plaintiff's impairments and the limitations stemming from each, and applied the correct legal standards in concluding that Plaintiff's impairments were not as limiting as alleged. Since the Court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision,

remand is unwarranted. *See Winschel*, 631 F.3d at 1178.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is AFFIRMED.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 22nd day of March, 2022.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record